UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 23-CR-123-1 (RDM) |
| | : | |
| DAVID MARESCA, | : | |
| | : | Motions Hearing: June 26, 2025 |
| Defendant. | : | |

## UNITED STATES' DECLARATION OF THE FILTER TIMELINE

On May 4, 2021, the Honorable Micheal S. Nachmanoff in the Eastern District of Virginia signed two search warrants authorizing the government to search (1) defendant David Maresca's residence ("Residential Premises") and (2) defendant Maresca's businesses—Synergy Law LLC and Themis Law LLC ("Office Premises").[1] Each warrant consisted of two parts: an Attachment A, describing the property to be searched, and an Attachment B, listing the items to be seized. The latter attachment was further organized into two subsections: (1) Documents, Records, and Property and (2) Filter Team for Potentially Protected Materials.[2] Attachment B in the Office Premises warrant described in detail the filter team protocol including membership of the filter team, general procedures for the search of the physical premises, general procedures for the filter team review of seized materials, and specific protocols for electronic storage devices and physical records. The extensive filter protocols were included in the warrant in an abundance of caution due to defendant Maresca's assertion that his businesses were national law firms providing legal services to homeowners facing foreclosure.

---

[1] The businesses occupied the same physical office.

[2] Attachment B (II) of the Residential Premises contains a "Potential Protected Materials" which references the use of a filter team if potentially attorney-client privileged material or protected material was discovered.

**BACKGROUND AND PRINCIPLES OF FILTER REVIEW**

The attorney-client privilege "is the oldest of the privileged for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Its purpose is "to encourage full and frank communications between *attorneys* and their clients and there by promote broader public interests in the observance of law and the administration of justice." 449 U.S. at 389 (emphasis added). Because the attorney-client privilege "has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403-04 (1976) ("[The privilege] protects only those disclosures—necessary to obtain legal advice—which might not have been made absent the privilege.").

The party seeking to invoke the privilege bears the burden of proving all its essential elements. Further, because the privilege is in derogation of the search for the truth, it should be construed narrowly. *United States v. Ivers*, 967 F.3d 709, 716 (8th Cir. 2020) (holding that a client's "tirade" at the end of a phone call with his court-appointed attorneys, wherein the client threatened to harm a judge, could be separated from the remainder of the privileged call and was thus not protected by the attorney-client privilege); *In re Kellogg Brown & Root, Inc.* 756 F.3d 754, 760 (D.C. Cir. 2014) (courts should evaluate "whether obtaining or providing legal advice was one of the significant purposes of the attorney-client communication").

*Filter Protocol As Applied*

The Office Premises purported to house two national law firms which collected millions of dollars as legal fees from in or around 2016 through at least 2022. Although the evidence gathered by the government's investigation at that point suggested that the law firms were a sham and never provided legal advice to anyone, the government determined that out of an abundance

2

of caution a filter protocol would be included in the Office Premises search warrant. The use of a filter protocol is a common practice whenever law enforcement executes a search warrant at the office of an attorney. The purpose of the protocol employed in this case was to establish a filter team that could independently evaluate the material for the existence of privilege. The filter team was only to evaluate materials for the existence of privilege. The filter team was not connected to the underlying investigation, as such, they were not positioned to conduct a relevancy review of the material.[3]

In this case, the filter process was complex due to a number of factors. First, the volume of materials which included both physical documents and the numerous electronic devices seized from both search locations. Further complicating the filter evaluation was the need for the filter team to factually determine the privilege holders and identify: (1) who were the clients, (2) who were the attorneys, and (3) what was the scope of the legal advice, if any, being provided. To make these complex factual and legal determinations, the filter team conducted several interviews in the months following the search to assist in this evaluation.

Separately, as the investigation continued, it became clearer to the prosecution team that the material seized could not be subject to a valid assertion of the attorney-client privilege, as the entire business conducted by Synergy and Themis was a sham. *See* ECF 80. Nonetheless, because the filter team is independent of the prosecution team—they continued their work and reached out

---

[3] The term "relevancy review" in this context means a review conducted by the case agent in accordance with Attachment B of the search warrant—what the government is permitted to seize as evidence—*after* the filter team removes any privileged materials. The relevancy review is sometimes referred to as "scoping," meaning the case agent runs relevancy terms and data filters on non-privileged materials. The result of scoping is a data set of non-privileged seized material in accordance with Attachment B of the warrant. Attachment B of the respective search warrants describes the "Property to be Seized." The attachment lists categories of materials which law enforcement may seize in the execution of the warrant. As a practical reality, in seizing computers and other electronic storage media that contain large amounts of information, it is impractical for law enforcement to review all the information contained therein. Accordingly, agents use date limitations and relevancy terms to as tools to sort and seize materials that fall within the scope of Attachment B.

to the defendants' counsel for assistance in the identification of non-privileged materials that could be released to prosecution team. Such discourse between the filter team and defense counsel is specifically encouraged in the filter protocol, and by case law, because once the defendants, who owned and operated the businesses at issue, were in the best position to know what material might be privileged. The inclusion of defense counsel in the filter process was necessary to more accurately and efficiently identify privileged material. However, in this case those discussions led to extensive correspondence between the parties, which necessarily extended the time required to complete the filter review.

## TIMELINE OF EVENTS

*May through June 2021*

On May 6, 2021, agents with the Federal Bureau of Investigation ("FBI") executed the Residential Premises and Office Premises warrants.[4] Multiple physical items were taken from both locations as well as 29 digital devices. At the residence, 15 digital devices were seized (two desktops, five laptops, one computer tower, four Apple iPhones, and three Apple iPads). At the office, 14 digital devices were seized (11 desktops, laptops, or computer towers, and three iPhones). Consistent with the terms of the search warrant, the 11 desktop, laptops, or computer towers seized at the Office Premises were forensically imaged at the search site onto two hard drives that were taken off-site by law enforcement.

That same day, the digital devices seized from both locations were provided to the FBI Computer Analysis Response Team ("CART") to process. When processing devices, the CART team undertakes a series of steps to include documenting the physical item, forensically imaging the item, performing an integrity check of the forensic image, processing the image to make the

---

[4] Following the execution of the search warrants, in or around May 2021, defendant Maresca obtained legal counsel.

data readable, and generating a portable case of the raw dataset (i.e. an unfiltered master copy). The CART team processed the seized devices from May 6, 2021 through June 3, 2021.

*July through October 2021*

The filter team determined that an essential first step in the filter review process was evaluating who, if anyone, who worked at Synergy/Themis was a lawyer, and what, if any, legal practice was being conducted out of the Synergy/Themis offices. Accordingly, the team spent some time in the May-June 2021 time period reviewing interviews that had previously been conducted with Synergy/Themis employees, and then, from approximately July 22, 2021, through October 12, 2021, the filter team conducted a series of interviews with attorneys connected to Synergy/Themis to assist in their evaluation of what constituted privileged materials:

- July 22, 2021: J.S. interviewed
- September 21, 2021: C.S. interviewed
- September 24, 2021: C.S interview continued
- September 27, 2021: L.B. interviewed
- October 1, 2021: R.B. interviewed
- October 4, 2021: Sam Babbs interviewed
- October 12, 2021: Sam Babbs interviewed

*September through December 2021*

Meanwhile, from September 14 through December 14, 2021, to facilitate pre-trial disposition discussions, the prosecution team and counsel for defendant Maresca entered into a tolling agreement. According to the terms of the agreement, the parties "agreed that the statute of limitations for the offense under consideration by the grand jury shall be tolled from September 14 through December 14, 2021 ("the Term")." Moreover, defendant Maresca agreed not to "plead,

argue, or otherwise raise any defense based upon pre-indictment delay, laches, estoppel or other similar defenses or time limitations (whether constitutional, statutory, contractual, or otherwise) based upon pre-filing delay that includes the Term as part of a defense." (9/14/21 Tolling Agreement (Ex. 01).)

The potential for a pre-trial resolution impacted the filter team efforts. In or around December 11, 2021, the filter team held in abeyance, for a brief period, further action to include its analysis of possible privileged material. The filter team awaited direction from the prosecution team specifically regarding whether the case would be resolved via pre-indictment disposition, thus mooting any further filter review. Ultimately, defendant Maresca and the government were unable to reach a disposition resolution, and the tolling period concluded.

*January 2022 through February 2022*

Once the pre-indictment plea negotiations concluded, the filter team resumed its efforts. Between January 31 through February 15, 2022, the filter team and defendant Maresca's counsel corresponded and discussed defendant Maresca's position on whether certain scripted materials[5] found in the Office Premises might be protected from disclosure to the prosecution team. As stated in Attachment B (II)(D)(2), "the filter team attorney will work with counsel for the privilege holder to try to reach an agreement as to whether the Privilege Review Materials: (1) falls within an exception to the applicable protection, (2) can be redacted to eliminate the protected information, or (3) can be provided to the investigation/prosecution team without objection from the privilege holder."[6] Consistent with that requirement, the filter team provided a deadline of February 18,

---

[5] As alleged in the indictment, the employees of Synergy and Themis operated a "call center" at which "call center workers used scripts during their phone calls with homeowners in which Synergy Law falsely promised that an attorney would review the homeowner's case file; that this attorney knew their lender's 'internal guidelines' for a 'mortgage resolution;'" and that an assigned 'legal team' would contact the homeowner's lender to negotiate a resolution." ECF 1 at ¶10(d).

[6] The search warrants reference the filter team and the investigation/prosecution team. For purposes of this declaration,

6

2021, for defendant Maresca to raise any objections or the materials would be provided to the prosecution team. No objection was raised, and the materials were provided to the prosecution team on February 22, 2022. (1/31/21 – 2/22/21 email correspondence (Ex. 02).)

*March through August 2022*

Between March 30, 2022 and June 22, 2022, the filter team completed its review of and cleared (i.e., certified that the data was not privileged or created a version of the data that removed any privileged material) multiple items of physical and digital evidence. Specifically, on March 30, 2022, the filter team provided to the prosecution team the following 1B (evidence) items:

- March 30, 2022 – Filter team cleared some evidence from 1Bs 19, 22, 23, 28, 38, 42, 55, 56, 72, 111, 124, 133, 136, 143, and 146 (***physical evidence***) and released them to prosecution team:

| Item # | Acquisition Event | Description |
|---|---|---|
| 1B146 | Office Premises | Financial and bankruptcy records (NT) |
| 1B143 | Office Premises | Receipts, Bills, Notes, Checks, Notepad (NT) |
| 1B136 | Office Premises | Tax Forms & MORESCA personal records, correspondence, payroll reports, Financials, Employment Contracts (NT) |
| 1B133 | Office Premises | Payroll, Financial Records, Voided Checks, Credit Card records, chargeback records (NT) |
| 1B124 | Office Premises | Potential Client / lead documents. Bankruptcy closing scripts, typed letter to U.S. Bankruptcy Court Clerk (PT) |
| 1B111 | Office Premises | Scripts (PT) |
| 1B72 | Office Premises | Financial Statements, Maresca Bankruptcy Filings, Synergy Staffing Corp docs, Payroll docs, Themis Law Bankruptcy docs, Court docs. (NT) |

---

the filter team means: (1) the filter attorney and the filter supervisor from the U.S. Attorney's Office in D.C., (2) the filter agent from the FBI, and (3) the forensic examiner/ computer technician—the FBI CAST examiner. The investigation/ prosecution team means the assigned attorney of record for the U.S. Attorney's Office in D.C. and the assigned case agent from the FBI. For ease of reference, the investigation/prosecution team will simply be referred to as the prosecution team.

| | | |
|---|---|---|
| 1B56 | Office Premises | Four green file sleeves containing documents. One loose document. (PT) |
| 1B55 | Office Premises | Client Paperwork (PT) |
| 1B42 | Residential Premises | 30 boxes of client documents - 18 of 30 |
| 1B38 | Residential Premises | 30 boxes of client documents - 14 of 30 |
| 1B28 | Residential Premises | 30 boxes of client documents - 4 of 30 |
| 1B23 | Residential Premises | Business docs and tax W2 |
| 1B22 | Residential Premises | 1 box of Synergy Attorney services documents |
| 1B19 | Residential Premises | Synergy law services documents |

☐ June 22, 2022 – Filter team cleared some evidence from 1Bs 2, 3, 8, 9, 11, 16, 147, 149, and 150 (*digital evidence*) and released them to prosecution team. Specifically, the filter team released Quickbooks files, spreadsheets and other files containing tax and other financial records ending in file extensions such as .XL*, .CSV, .TAX*, .QWC, and .LOG from the following digital devices:

| Evidence Number | Description | Seizure Location |
|---|---|---|
| 1B2 | One Apple Cell phone silver in color IMEI 352031079969548 Model # A1586 | Residential Premises |
| 1B3 | One Apple iphone 12 in pittsburg steelers case | Residential Premises |
| 1B8 | One iPhone Model A1533 IMEI01378900754202 | Residential Premises |
| 1B9 | One iPhone Model A1387 FCC: BCG-E2430A, IC: 579C-E2430A | Residential Premises |
| 1B11 | Apple iPad model# A1396 IMEI 012929002832257 S/N DN6GXMZ4DFJ1 | Residential Premises |
| 1B16 | One iPad S/N GG7YL4NAJMVR | Residential Premises |
| 1B147 | One iPhone A1778; FCC ID: BCG-E3091A. IC: 579C-E3091A (PT) | Office Premises |
| 1B149 | One iPhone A1549; FCC ID: BCG-E2816A. IMEI: 358372068286930 in silver "Steelers" logo (PT) | Office Premises |
| 1B150 | One iPhone in black case with "Steelers" logo and text written in yellow (PT) | Office Premises |

On June 17, 2022, the filter attorney, left the U.S. Attorney's Office. At the time of his

8

departure a new filter attorney had not been appointed; however, the filter team supervisor was still working with the filter agent in the interim to clear items for production to the prosecution team, such as interviews conducted by the filter team.

From July 2022 through October 2022, the filter agent also continued his review of the digital evidence for clearly financial and non-privileged evidence, including the following digital devices:

| Evidence Number | Description | Seizure Location |
| --- | --- | --- |
| 1B1 | Dell Laptop lattitude E7470 Serial #7026617054 with power cord | Residential Premises |
| 1B4 | Dell desktop optiplex 990 Service tag 1N4P5R1 model #D03S | Residential Premises |
| 1B5 | Dell laptop lattitude 7480 Serial # 13022676650 with cable (power) | Residential Premises |
| 1B12 | Sony Vaio Laptop (VPCSC1AFM) S/N 275390303026393 | Residential Premises |
| 1B13 | One Dell Laptop with serial number BHB9KV1 | Residential Premises |
| 1B14 | Dell Laptop S/N 8NBKV1 | Residential Premises |
| 1B20 | One Dell "Optiplex 790" desktop computer "Haley" | Residential Premises |
| 1B21_1 through 1B21_2 | Computer tower i series A272A650 0072618 | Residential Premises |
| 1B152_1 through 1B152_10 | 2. TB Hitachi HDD, S/N: JK1101B9H1W6WL containing forensic images of devices from Rooms: E, F, G, H, I, and L (PT) | Office Premises |
| 1B153_1 | 4 TB Western Digital HDD, S/N: WCC131NKCS7D, containing image of a 2TB internal HDD from a Dell Optiplex 990, Service Tag: D7320R1 (PT) | Office Premises |

The filter agent completed this review in October 2022 but did not release the cleared data to the prosecution team until February 2023, after consulting with the filter attorney and filter attorney supervisor.

*September through November 2022*

9

On September 2, 2022,[7] a new filter attorney was assigned to the filter team and debriefed on the status of the filter review. The filter team continued its work. In addition to her filter work, the filter attorney was also preparing for a trial in November 2022. Nonetheless, the filter attorney cleared documents related to an interview conducted by the filter team on November 4, 2022, and cleared additional documents provided by a witness during another interview conducted by the filter team on November 21, 2022.[8]

*November 2022 through February 2023*

From November 2022 through February 2023, the filter agent reviewed a hard drive received from a Synergy/Themis employee via that employee's attorney. That item, although not seized the Office Premises search warrant, was reviewed using the same filter protocol as prescribed in Attachment B of the Office Premises warrant. This hard drive was released to the prosecution team in February 2023.

*March 2023 through December 2023*

The prosecution continued its investigation into 2023, and a Federal Grand Jury indicted defendant Maresca, along with co-defendants Scott Marinelli, Terrylle Blackstone and Sam Babbs, III on April 13, 2023. The indictment charged the defendants with multiple criminal offenses, to include conspiracy, wire fraud and mail fraud. Each defendant obtained counsel, and the filter team began working with defense counsel on the privilege review. On July 31, 2023, consistent with filter protocol stated in Attachment B (II)(C), the filter team provided counsel for each defendant with a hard drive containing 1,800 files that were sequestered from the prosecution team

---

[7] It is worth noting that, during the several months where there was no line-level filter attorney assigned, the U.S. Attorney's Office was experiencing significant personnel strains due to the volume of cases and trials that the office was prosecuting as a result of the attack on the Capitol on January 6, 2021.

[8] In addition to reviewing evidence seized during the search warrants, the filter team reviewed any potentially privileged material obtained by the prosecution team, including evidence voluntarily provided by witnesses.

10

and a spreadsheet identifying the files in the filter production. The filter team requested that the defense advise the filter team by August 14, 2023, whether any of the materials contained attorney-client privileged or attorney work product information.[9] ( 7/28/23 Filter Ltr. (Ex. 03).) In response to a request from defense counsel, the filter attorney followed up with additional information about the files contained in that production on September 30, 2023, and October 11, 2023. (9/30/23 Filter Ltr. (Ex. 04) and 10/11/23 email correspondence (Ex. 05).)

On August 22, 2023, the government extended plea offers to all defendants. Each defendant requested time to consider the proposal and discuss a resolution with the government.

On December 8, 2023, counsel for defendant Maresca and counsel for defendant Marinelli sent correspondence updating the filter attorney about the status of their filter review. An email from counsel for defendant Maresca noted that they were working though the materials provided back in July 2023, and that over 452 documents provided by the filter team were not privileged and could be provided to the persecution team. (7/28/23 Maresca email correspondence (Ex. 06).) Counsel for defendant Maresca also stated that they had not completed their review of the filter production. (1/22/24 Joint Status Report ¶ 8 (Ex. 07).) A separate letter from defendant Marinelli's counsel, noted the difficulties in reviewing the materials but they were able to identify 43 privileged items for exclusion. (7/28/23 Marinelli Ltr. (Ex. 08).) Specifically, counsel for defendant Marinelli stated that they lacked sufficient information to complete a privilege log of the 43 documents.[10] Counsel for defendant Marinelli agreed that the filter team could provide the

---

[9] As part of the filter protocol, Attachment B (II)(C) specially states: "the filter team may ask and attorney for any of the subject companies whether a seized electronic storage device, file, or email account, may contain attorney-client privileged or attorney work product ("protected material"). If the subject company stats in writing that the electronic storage device, email account, or files does not contain either attorney-client privilege or attorney work product material, then not further filter review is required."

[10] Counsel for Mr. Marinelli wrote: "Based on the lack of organization, metadata, and other information available about the filtered materials, we are unable to complete a full privilege log. We note that virtually all documents produced by the filter team lack key information necessary to make privilege determinations, including but not limited

prosecution team with the remaining 1,750 documents—this included the 452 documents cleared by defendant Maresca's counsel. (1/22/24 Joint Status Report ¶ 9 (Ex. 07).)

*January 2024 through March 2024*

On January 30, 2024, the filter team requested that the defense provide hard drives so the filter team could upload seized digital media for privilege review. Due to technical issues with the hard drive, defendant Maresca did not receive his copy until February 23, 2024. (1/30/24 filter email correspondence (Ex. 09).) On these drives, the filter team provided over five terabytes of digital media to all defendants and provided defense counsel with an index of this digital media. The drives contained, among other data, a copy of all the digital devices seized during the execution of the Residential Premises and Office Premises search warrants. The filter team asked that the defense notify the filter team by March 1, 2024, whether any of these additional materials contained protected materials; however, counsel for the defendants requested additional time through March to respond. (3/22/24 Joint Status Report ¶9 (Ex. 10).)

On March 20, 2024, defense counsel was alerted that the filter team had in its possession a laptop and mobile phone that defendant Marinelli voluntarily provided to the FBI in connection with a different investigation in 2019, and which the prosecution team in this case had subsequently obtained its own search warrant to review. That same day, the filter team provided a full copy of those devices to counsel for defendant Marinelli. After counsel for defendant Marinelli cleared those materials, on July 23, 2024, the filter team provided the materials to counsel for all defendants to assert any objections to the filter team providing the materials to the prosecution team. (7/23/24 filter Ltr. (Ex. 11).) No defendant indicted any objection, and the materials were

---

to: (i) who created the document; (ii) when the document was created; (iii) whether the document was attached to a separate communication between attorney and client; (iv) who was in custodial possession of the document; (v) how the document was stored; and (vi) how the documents were organized into separate files."

12

provided to the prosecution team in or around early October 2024.

*May 2024 through December 2024*

On March 21, 2024, defendant Maresca's current counsel from Williams and Connelly filed their notice of appearance. On May 16, 2024, defendant Maresca's counsel alerted the filter team of their belief that the defense was not required to review the seized material for privilege materials. Rather, counsel stated:

> "your letter of January 30, 2024 requests that defendants provide the Filter Team with a log identifying all "potentially Protected Material," as well as the legal basis for each designation. The May 4, 2021 warrant authorizing the search of office space at 8870 Rixlew Lane, however, requires a different process. First, the Filter Team must determine what is and what is not responsive to the warrant. The warrant provides that "[f]or that protected and potentially protected material that is not responsive to the search warrant, the filter team will segregate and **not** disclose that material to the investigation/prosecution team." Warrant at 11 (emphasis added). Next, the warrant directs the Filter Team to log potentially privileged material that is responsive to the warrant and to work with counsel to address privilege issues with respect to these materials, reverting to the court if needed. *Id.* Accordingly, we will review for privilege specific documents that you propose to send to the prosecution team."

(1/30/24 Maresca email correspondence (Ex. 12).) Counsel for defendant Maresca and the filter team spoke about the privilege process on May 30, 2024.

Following that discussion on June 21, 2024, the filter team sent a letter to the defense seeking insight into identifying privileged material. (6/21/24 filter Ltr (Ex. 13).) On June 28, 2024, counsel for defendant Maresca sent a letter to the filter attorney reiterating counsel's belief that the privilege review should be conducted by the filter team and not defense counsel. (6/28/24 Maresca Ltr (Ex. 14).) In that letter, the defense stated: "it is our position that the government's failure to "review . . . and segregate potentially protected materials" as directed by the warrants would render the government's search unreasonable in violation of the Fourth Amendment." The letter also requested that the filter team identify any potentially exculpatory documents encountered in the

13

privilege review.

On July 23, 2024, the government responded to defendant Maresca's June 28 letter and a separate July 19, 2024 letter from defendant Marinelli's counsel. (7/23/24 filter Ltr. (Ex. 15).) In that letter, the filter team expressly provided to the defense the process the filter team would follow to review the materials for privileged devices. Specifically, the government proposed a list of search terms to apply across the searchable content to identify potentially privileged materials. The defense had one week to provide the filter team with any additional terms they wanted added. The filter team would run all terms and provide responsive material to the defense.[11] The defense would have 45 days to notify the filter team of any privileged materials and the basis for the privilege.[12] The filter team would apply the same process for the devices seized from defendant Maresca's residence. Lastly, the filter team would apply the same process to materials received from the receiver. (7/25/24 Status Report pp. 4-9 (Ex. 16).)

On July 25, 2024, counsel for defendant Maresca responded to the filter team letter agreeing that the filter team protocols should apply uniformly to materials seized from the Residence and Office warrant. (7/25/24 Maresca Ltr. (Ex. 17).) However, defendant Marasca declined to provide privilege terms to the filter team. On July 29, 2024, counsel for defendant Marinelli similarly declined to provide privilege terms for the filter team to apply to the seized material. (7/25/24 Marinelli email correspondence (Ex. 18).)

On August 12, 2024, the government filter team wrote to the defendants with a list of sixteen filter search terms that the filter team proposed to use to identify potentially privileged materials. (ECF 76-10 at 3.) The filter team invited the defendants to supplement that list with any

---

[11] Materials that did not hit on the search terms could be provided to the prosecution team.

[12] Any materials for which no privilege was asserted would be provided to the prosecution team.

14

additional terms by no later than August 23, 2024. (*Id*.) Counsel for defendants Maresca and Marinelli declined to provide any filter terms that would assist the filter team in its work before that date.

On August 12, 2024, the prosecution team filed a Motion to Compel Production of Materials from Residence Search to the Prosecution Team. ECF 7. On August 21, 2024, defendant Maresca filed an Opposition to the Government's Motion to Compel. ECF 76. On August 30, 2024, the prosecution team filed an *Ex Parte* Motion for an Order to Compel Production of All Materials from the Office Search or, in the Alternative to Vacate the Filter Protocol. ECF 80.

At the September 3 hearing, the Court directed the defendants to provide filter search terms to the government filter team by no later than September 4, 2024. The Court asked that the filter team not share these additional search terms with the prosecution team. On September 4, 2024, counsel for defendant Maresca provided the filter team with filter terms to identify files pertaining to defendant Maresca's personal privilege. Counsel for defendant Maresca asked the filter team that these search terms not be provided to counsel for defendant Marinelli. That same day, counsel for defendant Marinelli provided the filter team with a separate list of filter terms to identify files pertaining to defendant Marinelli's personal privilege. Counsel for defendant Marinelli also asked the filter team that these additional search terms not be provided to counsel for defendant Maresca. Although the filter team initially believed it could identify potentially privileged materials for the defendants' consideration by mid-September, that timeline was not feasible because of the defendants' request to run two separate lists of filter terms and segregate each defendant's search results. Additionally, on October 7, 2024, the FBI CART network went down. This caused the CART examiner to have to copy the data to a new system and restore all forensic images and processed data. This consisted of approximately 9.25 terabytes of data, which took approximately

four weeks of continuous efforts to get restored. During this time, the CART examiner was nonetheless able to run the terms provided by the defense to the data sets using a technical work-around.

Then, over the course of three rolling productions between October and December 2024, the government provided counsel for Maresca and Marinelli the "hits" on each of their privilege terms for all 29 devices. The first round of privilege hits were provided to defense counsel on or about October 23, 2024. (10/23/24 Maresca email correspondence (Ex. 19) and 10/23/24 Marinelli email correspondence (Ex. 20).) Both sets of defense counsel responded on November 8, 2024, to say that they were not asserting privilege over any of those items. (11/8/24 Maresca Ltr. (Ex. 21) and 11/8/24 Marinelli (Ex. 22).) The second round of privilege hits were provided to defense counsel on November 14, 2025. (11/13/24 Maresca email correspondence (Ex 23) and 11/13/24 Marinelli email correspondence (Ex. 24).) Counsel for Defendants Maresca and Marinelli responded on December 2 and 5, 2024, respectively, to report that they were not asserting privilege over any of those items (12/2/24 Maresca email correspondence (Ex. 25) and 12/5/24 Marinelli Ltr. (Ex. 26).) The third and final round of privilege hits were provided to defense counsel on December 9, 2025.[13] (12/19/24 Maresca email correspondence (Ex. 27) and 12/23/24 Marinelli email correspondence (Ex. 28).) On December 23, 2024, defendant Marinelli's counsel responded that they were not asserting privilege over any of those items (12/23/24 Marinelli Ltr. (Ex. 29).) Prior to responding to the filter team regarding the third and final round of privilege hits, on January 7, 2025, counsel for defendant Maresca filed a Motion to Suppress, citing the delay in the filter review process. On January 28, 2025, counsel for defendant Maresca filed a Reply to the

---

[13] Due to a technical error, Maresca's first version of this drive was missing some data; they received a complete replacement drive on December 19, 2024.

16

Government's Opposition Defendant Maresca's Motion to Suppress. That same day, counsel for defendant Maresca responded to the filer team regarding the third and final round of privilege hits stating that they asserted no privilege over some of the devices, but they had not completed their privilege review of the "Cellebrite devices," *i.e.*, those Apple iPhone and iPad devices seized from Maresca's residence and processed through a program called "Cellebrite." (1/28/25 Maresca email correspondence (Ex. 30).)[14]

*January 2025 through the present*

On January 31, 2025, the filter team cleared 19 of the 29 seized digital devices. The only devices remaining in the filter process are the 10 Apple iPhone and iPads that were seized—four Apple iPhones and three Apple iPads from the Residence warrant and three iPhones seized from the Office warrant. Of the 19 cleared devices, Special Agent Melissa Lawrence scoped, meaning ran date limitations and relevancy terms on those non-privileged data sets. The scoping was completed by February 14, 2025. The prosecution team will not be in a position to scope the remaining 10 devices until counsel for defendant Maresca completes their review for privilege materials for these outstanding items and gets back to the filter team with their position on those items.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 31, 2025

/s/ *Sarah C. Santiago*
Sarah C. Santiago (GA No. 724304)
Assistant United States Attorney

---

[14] During the December 2024 – January 2025 time period, during this filter review of the digital devices, the parties were also able to complete the filter review of evidence provided by the Receiver, with the government producing the filter term hits on December 5, 2024, and counsel for Defendants Marinelli and Maresca responding on December 23, 2024 and January 10, 2025, respectively, that they were not asserting privilege over any of the items.