IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID MARESCA ET AL.,<br><br>Defendants. | 1:23-cr-00123-RDM |

**DEFENDANT DAVID MARESCA'S MOTION TO DISMISS COUNTS 1 THROUGH 11
AS UNCONSTITUTIONALLY VAGUE
<u>OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS</u>**

The Indictment in this case charges a fraudulent scheme spanning many years and covering all aspects of Synergy and Themis. But on the core alleged misrepresentation, the Indictment cannot make up its mind. It vacillates between charging that the companies never provided *any* "legal services," and suggesting that the companies simply failed to provide "legal services" in accordance with the clients' (unspecified) expectations. What's worse, the Indictment leaves the defendants to guess at what constitutes "legal services." And the specific examples of supposed misrepresentations are expressly non-exhaustive, affording the government free rein to try a case that the grand jury never considered. Counts 1 through 11 must be dismissed. At minimum, the Court should order a bill of particulars.

**BACKGROUND**

The Indictment charges the defendants with conspiracy to commit mail and wire fraud and substantive mail and wire fraud offenses based on an alleged "nationwide," five-year-long scheme targeting "thousands" of distressed homeowners. *See* Indictment ¶¶ 6, 7, 10w. The Indictment alleges that Synergy Law LLC ("Synergy") and Themis Law PLLC ("Themis") promised to

1

provide homeowners with "legal services"—a term the Indictment does not define. *See* Indictment ¶ 8. The Indictment asserts that both Synergy and Themis were partially owned by an attorney, yet also claims they were only "nominally" law firms. Indictment ¶¶ 10a, 10m.

The Indictment takes inconsistent positions on whether the defendants provided something that qualifies as "legal services." At times, the Indictment charges that the companies failed to provide" *any* "legal services." Indictment ¶¶ 8, 9, 10d, 10m, 10u, 10w, 10x. At other points, however, the Indictment gestures at a more modest claim: Synergy and Themis *did* provide "legal services," but just not "as promised." Indictment ¶¶ 7, 10g, 10t. The Indictment does not specify what is meant by "as promised."

The Indictment offers some allegedly false statements, including by unidentified "co-conspirators" and unspecified persons "working at the defendants' direction." *See* Indictment ¶¶ 8, 9. For example, the Indictment claims that the defendants (or their agents or co-conspirators) falsely promised clients that "attorneys with [Synergy or Themis] could help them avoid foreclosure," and that "an attorney would review the homeowner's case file." Indictment ¶¶ 10c, 10d, 10p, 10q. And the Indictment asserts that the defendants (or their agents or co-conspirators) lied about the location of the companies' headquarters, and about having attorneys that knew various lenders' "'internal guidelines' for a 'mortgage resolution'"—allegations that do not relate to the provision of "legal services." Indictment ¶¶ 8, 10b, 10d, 10n, 10q. The examples of allegedly false statements are expressly non-exhaustive; they are characterized as "[a]mong the manner and means by which the conspirators accomplished the object of the conspiracy." Indictment ¶ 10.

**ARGUMENT**

I.    **The Fraud and Conspiracy Charges Are Unconstitutionally Vague.**

    A.    **An Indictment Must Identify the Alleged Materially False Representations.**

The Fifth and Sixth Amendments, along with Rule 7, require an indictment to "fairly inform[] a defendant of the charge against which he must defend" and "enable[] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Hillie*, 227 F. Supp. 3d 57, 70 (D.D.C. 2017) (Jackson, J.) (citation omitted). "A cryptic form of indictment . . . requires the defendant to go to trial with the chief issue undefined" and leaves "the prosecution free to roam at large—to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal." *Russell v. United States*, 369 U.S. 749, 766, 768 (1962).

Where, as here, a statute states an offense in "generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species,—it must descend to particulars." *Id.* at 765 (citation omitted). An indictment that "requires speculation on a fundamental part of the charge is insufficient." *United States v. Bobo*, 344 F.3d 1076, 1084 (11th Cir. 2003). To survive dismissal, an indictment must "contain every element of the offense charged" and "fairly apprise the accused of the conduct allegedly constituting the offense so as to enable him to prepare a defense against those allegations." *Hillie*, 227 F. Supp. 3d at 70 (citation omitted).

The mail and wire fraud statutes require the government to establish (1) a "scheme to defraud" and (2) use of the interstate wires or mails in furtherance the scheme. *See United States v. Scott*, 150 F.4th 580, 588 (D.C. Cir. 2025); *United States v. Coughlin*, 610 F.3d 89, 97 (D.C. Cir. 2010); 18 U.S.C. §§ 1341, 1343. By using the common-law term "defraud," the statutes require a "misrepresentation or concealment of a *material* fact." *Neder v. United States*, 527 U.S.

3

1, 21–25 (1999). As the government argued to the Supreme Court last term, only promises that go "to the very essence of the parties' bargain" are material. *Kousisis v. United States*, 605 U.S. 114, 131 (2025) (cleaned up). The Court did not adopt a particular test for materiality, but described it as an "objective" and "demanding" "element" of "the federal fraud statutes" that "substantially narrows the universe of actionable misrepresentations." *Id.* at 131 & n.7, 132, 135 (citations omitted).

A mail or wire fraud (or related conspiracy) indictment therefore must identify "the particular pretenses, representations or promises" that are allegedly fraudulent. *United States v. Curtis*, 506 F.2d 985, 990 (10th Cir. 1974). The "false and fraudulent pretenses, representations, and promises," may not be "left to speculation." *Id.* at 989. Courts accordingly dismiss fraud charges when an indictment declines "to identify the *material* false representations," *United States v. Case*, 2007 WL 1746399, at *6 (S.D. Miss. June 15, 2007) (emphasis added); *see also United States v. Josten*, 704 F. Supp. 841, 844 (N.D. Ill. 1989), or "fails to allege why" a false representation "was *material*," *United States v. Chang*, 722 F. Supp. 3d 1340, 1349 (N.D. Ga. 2024). In the related false-pretense context, the D.C. Circuit has vacated a conviction where the indictment did not specify "the false representations which induced the victims to part with their money, which are the very core of the offense." *United States v. Nance*, 533 F.2d 699, 700 (D.C. Cir. 1976).

"Where the scheme to defraud alleged in the substantive count is not sufficient to state an offense, a conspiracy count based upon the charge must also be found deficient." *Bobo*, 344 F.3d at 1086; *see also United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993). Courts thus dismiss conspiracy charges when the substantive fraud charge fails. *See, e.g.*, *Chang*, 722 F. Supp. 3d 1340 at 1350; *Case*, 2007 WL 1746399, at *6.

4

Similarly, "an indictment is defective if it contains logically inconsistent counts." *United States v. Conde*, 309 F. Supp. 2d 510, 511 (S.D.N.Y. 2003); *see also United States v. Cantrell*, 612 F.2d 509, 511 (10th Cir. 1980); *United States v. Rajarantnam*, 2014 WL 1554078, at *6 (S.D.N.Y. Apr. 17, 2014). Where "two allegations are mutually exclusive," the indictment deprives the defendant of fair notice. *Conde*, 309 F. Supp. 2d at 511–12; *see also Cantrell*, 612 F.2d at 511. In this context, one court has ordered the government to choose which of two inconsistent allegations to pursue: (1) a dentist committed fraud by billing for specific procedures that "he did not perform" or (2) the dentist committed fraud because he *did* perform those procedures, but they "were not required or necessary" under the federal health care fraud statute. *United States v. Palo*, 2017 WL 6594196, at *6 (W.D. Pa. Dec. 26, 2017).

**B.     The Indictment Fails to Specify the Alleged Fraudulent Representations.**

The Indictment here fails these standards. First, the Indictment makes contradictory allegations that (1) Synergy and Themis never provided *any* "legal services" and (2) the companies *did* provide "legal services," but not "as promised." *Supra* at 2. These allegations are incompatible; the companies either provided "legal services" or they didn't. Defendants should not be "left to speculat[e]" about what the grand jury found on such a critical issue. *Curtis*, 506 F.2d at 989; *Bobo*, 344 F.3d at 1084; *see also Palo*, 2017 WL 6594196, at *6.

Second, the charges are predicated on the vague term "legal services" when describing the defendants' supposed misrepresentations, leaving the defendants to guess about fundamental aspects of the charges. Is the issue that, in the government's view, Themis and Synergy were not law firms at all (for some unspecified reason) and hence could never provide "legal services"? Or is the problem that, in the government's view, the degree of attorney involvement or oversight at Themis and Synergy was insufficient to render the firms' work "legal services"? Or was the nature

5

of the work performed simply not sufficiently "legal" such that it did not qualify as "legal services" even if performed by a lawyer or under the supervision of a lawyer? The Indictment does not say.

It is no answer for the government to point to the examples of false statements that are mentioned in the Indictment, as the examples do not clarify the ambiguity identified above, and are expressly non-exhaustive. *See* Indictment ¶ 10. The government apparently seeks flexibility to identify at trial *additional* theories or fraudulent statements, presumably to any of thousands of unidentified clients or prospective clients. But "the Fifth Amendment requires that criminal prosecutions be limited to the unique allegations of the indictments returned by the grand jury." *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001). When the grand jury "indict[s] with one crime in mind," the government may not "prosecute by producing evidence of a different crime." *United States v. Thomas*, 444 F.2d 919, 922 (D.C. Cir. 1971). Otherwise, a defendant could "be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell*, 369 U.S. at 770.

In addition, the Indictment alleges that unidentified persons were "working at the defendants' direction" and unindicted co-conspirators furthered the supposed fraud. *See* Indictment ¶¶ 8, 9. The potential group of speakers whose statements could be attributed to defendants is therefore boundless. This defect only exacerbates the Indictment's vagueness.

At bottom, the Indictment leaves unanswered what fraud is being alleged. The defendants cannot prepare their defense in the dark. Counts 1 through 11 should be dismissed.

## II.   At Minimum, the Court Should Order a Bill of Particulars.

"A bill of particulars will not cure a fatally defective indictment." *Nance*, 533 F.2d at 701. But if the Court declines to dismiss the Indictment, a bill of particulars is warranted. *See* Fed. R. Crim. P. 7(f).

6

A bill of particulars is intended "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, to prepare a defense, and perhaps also to be protected against retrial on the same charges." *United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987). "Stating the charges with precision is important because 'a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element.'" *United States v. Connell*, 2023 WL 4286191, at *4 (D.D.C. June 30, 2023) (quoting *Richardson v. United States*, 526 U.S. 813, 817 (1999)). Courts thus grant bills of particulars when additional information is necessary "to clarify the indictment," *id.* at *5, or "allow the defendants to adequately prepare for and avoid surprise at trial," *United States v. Bazezew*, 783 F. Supp. 2d 160, 167 (D.D.C. 2011). Courts have "very broad discretion" to order a bill of particulars. *Will v. United States*, 389 U.S. 90, 99 (1967).

Several factors favor a bill of particulars in this case. *First*, as described above, the Indictment takes inconsistent positions on the core alleged falsehood, and it fails to limit the meaning of "legal services."

*Second*, the charged conspiracy spans "at least" five years and "thousands" of clients—and apparently involves all operations of both Synergy and Themis—leaving no limit to the number of statements that the government may attempt to introduce at trial. Indictment ¶¶ 6, 10w. Courts routinely order bills of particulars in such instances. *See, e.g.*, *United States v. Michel*, 2019 WL 5797669, at *17 (D.D.C. Nov. 6, 2019) (over three years); *United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998) (same); *United States v. Holmes*, 2020 WL 666563, at *9 (N.D. Cal. Feb. 11, 2020) (same); *United States v. Trumpower*, 546 F. Supp. 2d 849, 851–52 (E.D. Cal. 2008) (same); *United States v. Nachamie*, 91 F. Supp. 2d 565, 573 (S.D.N.Y. 2000) (same); .

*Third*, the government's massive document production does not obviate the need for particulars. As this Court has recognized, "it is not sufficient for the government to respond to a motion for a bill of particulars by pointing to the voluminous discovery already provided or by relying on a governmental open file policy." *Bazezew*, 783 F. Supp. 2d at 168; *see also Michel*, 2019 WL 5797669, at *18; *United States v. Anderson*, 441 F. Supp. 2d 15, 19 (D.D.C. 2006). Open file discovery is "no substitute for adequate specification of the crimes." *Trie*, 21 F. Supp. 2d at 21 n.12. Applying this principle, the Second Circuit in *United States v. Bortonovsky*, 820 F.2d 572 (2d Cir. 1987), reversed a mail fraud conviction because the district court declined to order a bill of particulars when the government provided "over 4,000 documents" and left the defendant "unguided as to which documents" contained false statements. *Id.* at 574–75. District courts around the country similarly recognize that a bill of particulars is necessary in cases, as here, involving large document productions. *See, e.g.*, *Michel*, 2019 WL 5797669, at *18; *Trie*, 21 F. Supp. 2d at 21 n.12; *Holmes*, 2020 WL 666563, at *9; *Nachamie*, 91 F. Supp. 2d at 571.

Here, as the Court is aware, the government has produced several *terabytes* of data—the vast majority of it in a disorganized manner and/or stripped of metadata. Moreover, the documents produced by the government show that attorneys employed or affiliated with Synergy and Themis *did* serve those companies' clients. This further exacerbates the Indictment's ambiguity.

Mr. Maresca therefore respectfully requests that, absent dismissal, the Court order the government to disclose the following in a bill of particulars:

1. The precise content of each materially false statement that forms the basis for the mail fraud, wire fraud, and conspiracy charges, as well as an explanation why each such

statement is false. For each statement, the government should disclose (1) who made the statement and (2) how a defendant caused the statement to be made.

2.   The identity of all unindicted co-conspirators.

    **A.   The Content of Each Materially False Statement and Why it is False.**

In fraud and false-statement cases, courts in this district recognize that a defendant "should not have to guess which false statement he has to defend against while he prepares for trial," and accordingly order the government to identify "precisely which allegedly false statements the government relies on" and "the way in which the government alleges them to be false." *Anderson*, 441 F. Supp. 2d at 20; *see also Trie*, 21 F. Supp. 2d at 21–22. District courts nationwide do the same. *See, e.g.*, *United States v. Harbour*, 2021 WL 842146, at *2 (D. Ariz. Mar. 4, 2021); *Holmes*, 2020 WL 666563, at *9; *United States v. Velez*, 2008 WL 11454799, at *2 (S.D. Fla. July 11, 2008); *Trumpower*, 546 F. Supp. 2d at 852; *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006); *Nachamie*, 91 F. Supp. 2d at 574–76.

Here, the Indictment's examples of allegedly false statements are contradictory, vague, and expressly non-exhaustive. *Supra* at 5–6. As one court has explained, a defendant "should not be required to guess as to whether" a handful of allegedly false statements in an Indictment constitutes "an exhaustive list." *Velez*, 2008 WL 11454799, at *2. When the government provides "non-exhaustive" information, that weighs in favor of a bill of particulars. *United States v. Michel*, 2019 WL 5797669, at *18 (D.D.C. Nov. 6, 2019). Moreover, the Indictment offers no explanation of *why* any given statement is false. *See supra* at 5–6 (discussing vagueness of "legal services").

Accordingly, the government should identify each materially false representation and explain why each is false. For each statement, the government should also disclose (1) who made the statement and (2) how a defendant caused the statement to be made. *See Anderson*, 441 F.

9

Supp. 2d at 20 (granting similar relief); *Trie,* 21 F.Supp.2d at 21–22 (same); *Harbour*, 2021 WL 842146, at *2 (same); *Holmes*, 2020 WL 666563, at *9 (same).

### B.     Identity of Alleged Co-Conspirators.

The Indictment's allusion to unidentified co-conspirators compounds its vagueness. *See* Indictment ¶ 9. This Court has recognized "concrete risks" associated with a defendant not knowing the identity of potential co-conspirators. *Michel*, 2019 WL 5797669, at *18. For example, a defendant could be "held liable for the actions of any co-conspirators," and "the identity of co-conspirators may impact what evidence can be admitted at trial" under Federal Rule of Evidence 801(d)(2)(E). *Id.* "[B]ecause of such risks, courts in this district have frequently granted motions for bills of particulars listing unindicted co-conspirators." *Id.* (granting bill of particulars); *see also Bazezew*, 783 F. Supp. 2d at 168–69; *United States v. Palfrey*, 499 F. Supp. 2d 34, 52 (D.D.C. 2007); *United States v. Ramirez*, 54 F. Supp. 2d 25, 30 (D.D.C. 1999); *Trie*, 21 F. Supp. 2d at 22. Courts in other districts agree. *See, e.g.*, *Holmes*, 2020 WL 666563, at *10-11; *United States v. Long*, 2008 WL 11336760, at *4 (N.D. Ga. Oct. 3, 2008); *Nachamie*, 91 F. Supp. 2d at 573; *United States v. Failla*, 1993 WL 547419, at *7 (E.D.N.Y. Dec. 21, 1993).

Here, the Indictment does not identify the speaker of any alleged misrepresentations, leaving no limit on the number of people whose statements may be used against Mr. Maresca. The government must limit the universe of speakers who allegedly furthered the supposed conspiracy.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Counts 1 through 11 of the Indictment. In the alternative, the Court should order the government to file a bill of particulars.

Dated: November 7, 2025                             Respectfully submitted,

*/s/ Peter S. Jorgensen*
David M. Zinn (D.C. No. 435770)
Stephen L. Wohlgemuth (D.C. No. 1027267)
Feyilana Lawoyin (D.C. No. 90003372)
Danielle J. Sochaczevski (D.C. No. 1670662)
Peter S. Jorgensen (D.C. No. 90003145)
Williams & Connolly LLP
680 Maine Ave., S.W.
Washington, DC 20024
(202) 434-5000

*Counsel for David Maresca*